We will now hear argument in case number 24-2673. Jonathan DeFraia, please correct my pronunciation, versus Kevin Ransom. Counsel for appellant Mr. Longley, whenever you are ready. Good morning, Your Honor, and may it please the Court, Joseph Longley on behalf of appellant Jonathan DeFraia, I'd like to reserve three minutes for rebuttal. Granted. And is it okay to stay sitting? Whatever you prefer. If you prefer to stand, that's fine. If you prefer to sit, that's okay. Great. Defendant removed Mr. DeFraia from his life-saving medication for a non-medical reason, two alleged disciplinary violations. A straightforward application of this court's precedents required this court to find that he plausibly alleged a violation of the Eighth Amendment and the Americans with Disabilities Act. Under the Eighth Amendment, this court has held that in cases like Rouse and Bremer, that making medical decisions for non-medical reasons states a claim for deliberate indifference to a... Neither of those cases involved, you know, those were about, you know, cost or something administrative. It wasn't about, you know, diversion or something like that. So there's nothing closely factually analogous here, correct? I would say that certainly is a factual distinction. However, the language used in both Rouse and Bremer, specifically Rouse talks about a non-medical reason. Okay, so the wording is broad, but the factual context you don't dispute is distinguishable. Well, I think that the facts alleged here do not allege a diversion incident. What is alleged at this stage, at the 12B6 stage... Your client disputes that he in fact did not divert. I get that. Correct. But there's no dispute that the prison authorities were under the impression that he was diverted. Correct. That they told him that he didn't have to be caught diverting. And you have no allegation or evidence that that was a pretext that someone in fact said, I'm going to get you or I'm going to make this up. So on the one hand, you say he wasn't diverting, but you have nothing to dispute that they thought he was diverting. Correct. I think the allegations in the complaint show that he wasn't diverting, but certainly he was alleged to have been diverting. And there's nothing suggesting that's a pretext, some guard, you know, there's nothing to undercut their proffered reason as being a sincere or genuine is what I'm saying. Well, I think that Mr. Dupriah was removed from his medication for opioid use disorder, which is the allegation in his complaint. And he makes the allegation at JA32 that if this was another medication, he wouldn't have been removed from that medication. And so... I get that, but you have nothing in the complaint and nothing in the record you can point to that cast doubt on the sincerity or genuineness as opposed to whether that belief was in fact correct or true. This is your chance to dispute that or cite something if there's something contrary in the complaint or in the record, because I didn't see it. Well, I think at JA31, he's told by the prison staff in response to being asked to be put back onto his medication, that he didn't have to be caught diverting in order to be considered a diverter. He didn't have to be caught diverting, but there's nothing suggesting that this is a, you can't cite anything to suggest this is insincere or a pretext. Well, you know, I don't think that that is required under the... Okay, your dispute is that's not required, but it's not questioning the genuineness. That ultimately goes to the legal standard, but I would just want to be clear on what factual is the issue. All right, go on. So under the ADA, this court has held in cases like Fugus and Williams that disciplinary violations don't strip individuals. That's true. But under the ADA, you have to show that this was not despite his disability, right? That this is this is, you know, because of his disability, right? That this is not... If it just happened that he was disabled, that's not enough to say that therefore he has a right to this medication. Well, under the dispute treatment fee, that's true, that he has to show that it was because of his disability that he was cut off of his medication. And he has done that by alleging at JA32 that if this was another medication, he wouldn't have been cut off of his medication. And so he's... It just seems like the thrust of the complaint is not that, not that this decision was made based on disability. I think it goes back to the diversion point and just seems like there's not enough of a nexus here between or the alleged disability and the removal of the treatment. Well... I just want to hear your thoughts on that. Yeah, I mean, I think the nexus is actually quite close. And if you think about a case like Fergus, where he had a shower that was not accessible to him and the defense in that case, the Commonwealth said that was because he was in the restricted housing unit and because of a disciplinary violation. And the court said that that was irrelevant to the ADA claim because the reason why he couldn't access the shower was because of his disability. Likewise here, Mr. Dupriya can't equally access the program services for the activities of medical care and other services within the prison facility because of his opioid use disorder. Okay, but opioid use disorder, that's a fancy way of saying addiction, right? Yes, that's it. So you have to show, but for causation, right? Yes. But for the addiction, he wouldn't have suffered this action, right? All right, so let's imagine two inmates. One of them counts as addicted to opioids. There was an opioid user, but he's not addicted, all right? What is there in the record that suggests they would only have cut off the opioid addicted person and not the user? Because you have to show, but for the... they would have treated the two differently because of the addiction. I don't see anything in the record that suggests that. Well, I think there's so tightly tied together. In order to be prescribed medications for opioid use disorder, you have to have opioid use disorder, which is a disability. Wouldn't have prescribed it for someone who was a frequent user, but didn't quite reach the level of addiction? No. In fact, there's federal regulations that we could... and these are fact questions that could be developed on remand and discovery. But there's certainly requirements in order to get this medication to have a certain level of an opioid use disorder. So it wouldn't... just somebody who is not disabled and doesn't have an opioid use disorder, that's why there's a distinction there in that hypothetical. Can you talk a little bit about the significance of the seven-day taper allegation and anticipate an argument that that taper reflects Dr. Cross's medical judgment about how to treat this particular patient? Sure. Well, I would first point to the fact that there's no allegations. In fact, the only allegations are that he didn't receive any care after those seven days. And so, this quote has time and again found specifically in Druma, for example, where somebody had a stroke, got a lot of treatment for that stroke, but didn't get physical therapy. And the reason they didn't get physical therapy was an administrative reason, not a medical reason. But just the taper, to my mind, because it's alleged in the complaints, it's a part of the   It seems meaningfully different from that situation, at least arguably allows an inference that the doctor thought about what is acceptable for this patient, how can this work, as opposed to acting on a punitive basis or sort of just blindly incorporating this diversion finding, which I understand your position on it. So that taper piece, I think, is a rough spot here. I just want to hear you out on that. Well, I think that, again, going to Druma, the question is the intent of the physician. And that's a question of facts. And certainly, the defendants were free to develop that argument that it was... You have to meet plausibility. And this really seems to undercut the plausibility. That is a seven-day taper. No, no, no. The seven-day taper seems to undercut the plausibility of their being deliberate indifference or of their trying to discriminate or harm or anything like that. It seems like they're exercising medical judgment in tapering rather than cutting off cold turkey. Well, and that's what, you know, Farmer v. Brennan, and the Supreme Court's been very clear that there's not a requirement for an express intent to harm. What the question is, is whether there's deliberate indifference to a serious medical need. OK, but deliberate indifference is still an intent requirement of a sort. It's a kind of extreme recklessness. So you still, you have that issue and you have the causation issue. And I'm not sure I get that you, you know, gerrymandered this by saying, well, only addicts can use this. Let's imagine another hypo involving some people who might count as disabled under the ADA. Alcoholics, two of them in rehab. Now, one of them misbehaves during the program. He's accused of assaulting someone else in the rehab program. Maybe even assaults the person because he got drunk and angry. He gets kicked out. The other one doesn't get kicked out, but he didn't assault anybody, right? So both are disabled. But one gets kicked out because of misconduct during the program. The other doesn't. And the decision appears to be based solely on the alleged assault. You wouldn't dispute that that's not barred by the ADA, would you? And if it's not, then how is this case different from that one? Um, well, this case is different from that one because the allegations and the complaint are not that he committed any disciplinary infraction at all. But he was sincerely perceived to have committed an infraction. You don't dispute that they can regulate diversion, though you say your client didn't divert, but you're not, I don't take you to be disputing that they have a, it's within their rights to cut this off to people who are in fact diverting. You're just saying he wasn't one of them. Yeah, that's not a question that the court has to... I just want to make sure that we're talking clearly about that. So if there was a valid diversion finding, you wouldn't be here? I think... That's the distinction I think we're trying to get at. I mean, I think that that is a different case and that's not the allegations. And you're not disputing that they could kick out someone who was in fact diverting. I think that it would depend. And I think that the Eighth Amendment standard and the ADA standard are different here. Under the Eighth Amendment, denying somebody medical care for a non-medical reason amounts to deliberate indifference under this court's precedent. Do you agree that to say that even if the non-medical reason is, I in fact was diverting this and I was selling it for money and I was supporting my habit, do you say that that non-medical reason is not sufficient to allow kicking someone out? Not necessarily. I mean, I don't think that we... It's not necessarily sufficient or you're not necessarily disputing it? I mean, I'm saying that that's not the question before us today. Are you disputing that or not? That somebody can be kicked out for... Based on an actual diversion. You're saying your client wasn't diverting. I get that allegation. But if someone in fact was diverting, selling the diverted drugs, et cetera, could that person be kicked out even though that's a non-medical reason? I mean, I think that if the being kicked out is based on they didn't need it anymore medically, there's a judgment being made by the medical group. Let's say the medical people think he does need it, but he would rather sell it and get some different drug to satisfy his craving. So they think there's a medical... He still needs it, but he's diverting. Under your theory, can they do that? Can they cut him off or taper it down? I mean, I think that they need to not be deliberately indifferent to his serious medical needs. And so if there is a medical judgment that he still needs the medication and there's a safe way to provide it, and that goes to the ADA question, if we want to transition from the Eighth Amendment to the ADA here, there could still be reasonable accommodations, which we lay out. So you're saying they could be liable for tapering off or cutting off even in a situation where he is just breaking the basic rules of the program? If there is no... And this goes to Hertzfield, which is an Eighth Circuit case that we cite, which an individual was denied dental care because of their threatening behavior. And the court rejected an argument that that was a valid basis to remove them from their medical care. And there's been district courts as well who've discussed this issue as well and come out the same way that that can be a non-medical reason. But none of them have dealt with facts like this. Well, there are cases, Adams vs. Delaware County, out of the Eastern District of Pennsylvania, Wilkerson vs. Hammer, out of the Southern District of New York, that do discuss the situation and come out and say that those are non-medical reasons. Okay. There's a nexus, though, in this case between the decision and the treatment that's not present in those other cases. So if a guy with a heart condition doesn't get his heart medicine because he acted out, that's one thing. But if the heroin addict or methadone or whatever, what's it called? Suboxone, buprenorphine. If the addict doesn't get his suboxone because he's believed to be selling it or giving it away for other reasons, then the decision is directly tied to his actions with respect to the treatment in a way that the heart patient isn't. It's just sort of a callous decision not to, in the heart instance, it's a callous decision not to give him his heart medicine. Here, the judgment is we're not being deliberately indifferent, but the medicine we're giving him, he's being deliberately indifferent, as it were. He's not taking it. So we're going to not allow him to do that. Well, and I just want to be clear, once again, that these are not the allegations in this case. And the court does not have to reach this issue of somebody who is actually diverting. Here, Mr. Duvkaya was falsely accused of two disciplinary violations and then taken off of his medication. Well, I think the problem I have is you're saying he was falsely accused. You want to focus on it from his perspective. But as I understand, both Eighth Amendment deliberate indifference and the ABAs, you know, they focus on from the perspective of the violator. Indeed, the ADA has a regarded as formal liability. That's all about what's in the mind of the defendant, right? So I don't think we can take this from the plaintiff's perspective that, in fact, he hasn't diverted. We just have to ask if they sincerely believe that he wasn't. Deliberate indifference is a subjective standard and regarded as liability is a subjective standard. And so why does it matter if they were wrong? Well, because we're talking about the allegations in the complaint, and those allegations have to be taken as true, which is that he was falsely accused of direct. What is there in the complaint that even makes it plausible that they were deliberately indifferent subjectively or that they, you know, you know, that that the action they took was because of and not despite his disability? Because and this is an analogy that we make in the brief and an allegation that he makes at JA 32 that they wouldn't have done this for another medication solely because the but the only link there is because this medication is only given to people. It's not it's not because of some something about wanting to get it. If this could be prescribed, let's say the FDA's rules were broader and the FDA's rules allowed this to be prescribed to people who qualified as disabled under the ADA or people who were close to becoming addicted under the ADA, right? Is there anything to suggest that the prison guards would only have cut this off for people who cross the threshold into being disabled or as isn't it? Is that implausible? Well, as you mentioned, regarded as I mean, that might still be in people who regarded as having a disability of addiction. If so, I still think it's because of the disability that they're denying this care. Is it plausible for let's say an inmate had fibromyalgia, so had a lot of pain and was given strong pain medicines and was diverting those Oxycontin or something like that. Is it plausible that in that instance, the doctor would not have cut him off or tapered him down? Well, the question there under the ADA and argument under the ADA is that he would have to be reasonably accommodated. And so at ECF page 40, I believe it's footnote 13, we discuss, you know, they could have provided the very same medication for an injection instead of orally to get rid of any of the problems with diversion and for him to be able to equally access the program service reactivity of healthcare and prison health services. And so if there was a similar accommodation that could have been made, somebody only, you know, is able to get that medication in their cell. They have to stay longer or that, you know, those are the accommodations, affirmative accommodations that this court has held in Flugis and Williams and Montañez that they have to take in order to make sure that they have equal access to the program services reactivities, including healthcare. Let me just switch gears for a minute. We said in an older case from 1979 called Walker, that there's no constitutional right to methadone for heroin addicts in prison. They're still entitled to medical examination and medical care and so on, but they don't get as a constitutional right methadone. Is that somehow different than Suboxone here? Well, the question and the science has developed a lot since 1979. And I think that treatment for opioid use disorder, as we laid out in judicially noticeable documents in the opening brief, is medication for opioid use disorder standard of care for opioid use disorder. And so denying somebody as a policy or in response to non-medical, individualized medical reasons, access to that care would violate the 8th Amendment and would violate the Americans with Disabilities Act. And courts within this district, including in the Strickland case, have found the same and courts around the country, including in Smith and PG and Taylor, have found the same as well. And last little bit, I take it post Burke versus Choi, we'll have to ask your friends on the other side about this, that the state law of negligence claim just needs to go back because the law that has changed. Correct, that would be correct. You guys have anything else? No. All right. Thank you. We'll get you back on rebuttal. Thank you. And let's see. Counsel for Appellee. I think we have divided argument here. So it's Ms., do you say Wild Labay or Labay? Or am I mispronouncing it? Is that Labay? Could you speak up and tell us how to say your name?  Absolutely, Your Honor. It's Kathleen Wilde Labay. Wilde, oh, Labay with an M. I'm sorry for my notes. Your Honor, I think counselor is fine. I will respond to anything along those lines.  So take a moment and whenever you are ready, you have nine minutes for Mr. Ransom and then we'll get Mr. Lombard for Dr. Cross. Please proceed when you're ready. Thank you, Your Honor. May it please the court. As her name is Kathleen Wilde Labay, and I'm counsel for the Commonwealth Appellees in this matter, we respectfully submit that the court should affirm the district court's sound decision in this case. There's a lot of discussion about addiction and a lot of discussion about what could be. But the reality is that this case is about rules of civil procedure and the complaint that is before the court and the massive deficiencies that are in that complaint. And of course, the important factor is that Mr. Defia had the opportunity to amend his complaint and he expressly declined to do so. So many of the issues that we've been discussing, such as the issue of combination, whether the standards required have been met or what was intended, for example, by alternatives, those are all things that Mr. Defia could have addressed if he had taken that opportunity to amend his complaint and granted, he declined to do so. As we're counseling for discussing, I think one of the things that's very important to remember is that there's a seven-day paper following what was the belief that this was diversion. The facts suggest that this diversion, given that caps in this context would not be appropriate from a cigarette, that would not be appropriate. But even if we assume factually, the truth of what Mr. Defia has pled, which is that he didn't in fact divert, as the court has absolutely noted, there's no dispute that the reason for the diversion was not anything to start with, but rather a belief that diversion had occurred. And importantly, it was not diversion specifically led to removal from medication, but rather that was a factor that was part of the individualized assessment by Dr. Croft, a medical professional, who determined that the course of action that was most appropriate for this particular patient was to taper for seven days, provide supportive medications and such, you know, in the normal course, and that was it. So we can accept the facts, albeit sparse and pretty bald facts in the complaint, without having to, you know, go any further than that, because the reality is, it's agreement with what a medical professional has prescribed is not enough for an Eighth Amendment claim. And it's certainly not indifferent for our non-technical defendants to defer to the professional's judgment on that matter. It's also worth noting that at the very least, a couple of our defendants, Mr. Bauer and Mr. Osmowski, the only allegations regarding that is specifically regarding the issuance of discipline. That does not have anything to do with the Eighth Amendment, that does not have anything to do with the ADA. So at the very least, those defendants should not be part of this network anymore. With respect to the ADA- Ms. LeBette, could I ask you about this? Before we get to the ADA, or maybe this overlaps both of them, let's set aside the MAT program for a second. Let's assume we have some other medication. We have an inmate is on Xanax for anxiety or something, right? And then the inmate has been diagnosed with anxiety, but there are signs the person is diverting. He says he's lost pills. He asked for replacements, etc. And the inmate is, as a result of that, the doctors decide, no, we need to stop giving him the prescribed Xanax. Does the person have a policy in that situation? Does the policy of taking him off that medication or tapering the medication or something else, not as part of the MAT program? It's my understanding that the prison would very heavily look to what doctor or other medical provider has indicated is most appropriate. Certainly, there can be times where alternatives are explored. Perhaps there are ways to adjust, such as staying in the cell or having additional time with a professional. But generally, unless there is something that is so egregious, that would be an apparent type of indifference, our people at the corrections facility is going to follow what the doctors have indicated is the best course of action. So you'd follow what the doctor says. Here's, this is what the doctor said, but it's going to be a rare situation. There's not some policy. It goes to whatever the doctor's medical judgment is. That's my understanding. Where would we look in the record or in the prison's policies? I don't know if there's some citation you direct us to as to how these are handled more generally. That's a bit complicated, your honor, because the policies are publicly available to the extent that there are regulations for prisons as a whole. But when it comes to, for example, MAT programs, their overarching policy is very much just essentially to follow federal law, follow the usual guidance that applies. And then each institution takes on what is best for their actual setting based on their numbers, based on what they have available. So it's a little bit tricky, especially because it changes over time. The policy that we have now in 2026 is different than the policy that was in place when this occurred with Mr. DeFrayo. But overall, we don't like to have DOs and people who don't have the training guessing a doctor's sound judgment. It would have to be something, like somebody who's extraordinarily struggling and having great deals of pain where someone would have an actual indifference before there would be a time where it would be appropriate to second-guess the doctor's judgment. All right, I'm sorry, I sidetracked you. You were about to get to the ADA. I ought to let you get where you wanted to go. Thank you, your honor. The thing that's interesting with the ADA claim is that we've got an inconsistency in what was pledged. On the one hand, Mr. DeFrayo said he was denied medical treatment for a non-medical reason. But on the other side, he also says that he was denied a benefit because of his disability. So it kind of reaches the question, well, which is it? And at the very least, under the basic Rule 8 standards, how could the defendants know what they're supposed to be doing wrong and actually have a meaningful response? Regardless, there's no allegation that he requested an alternative treatment and was denied. There's no allegation that there was some reason, like as the court had noted, that this was meant for an inappropriate reason. There was a belief that he had been on free medication and that was in good faith, even if he says it didn't actually happen. That of itself gives us a really clear picture of what happened for ADA purposes. But the more important part is that there are not the requisite pleadings as far as we don't have potential capacity claims. The department is not named as a party. It's quite unclear from the complaint that would be those just not stated. But if these are only individual claims, which is what we were led to believe, then under the recently established case in Montana, those claims also fail because there is no liability under Title 2. And of course, because there's no actual federal funded type issue here, this is also not a Rehab Act type issue. It was a single line VA claim, a single sentence. So obviously we're really reaching and really giving the benefit of the doubt to this pro se inmate, even getting into a lot of these issues. But regardless, the district court made the correct decision. There was an opportunity to amend and Mr. Fryer chose not to. I don't know what they would expect this counselorship to come before this court now and say, well, we need to leave to amend when that opportunity was already given. And the court has already picked up on many of these gaps. Okay. Can I ask you before we let you go about the question I asked your friend on the other side? You know, a week ago, the Supreme Court ruled that under ERIE, state certificate of merit requirements don't apply in federal court. Given that ruling, and obviously the district court was operating under a contrary impression of the law, do you concede that we need to vacate and remand the district court's dismissal of the negligence claim here? I believe that's correct, your honor. That's a claim that's specifically for Dr. Cross and I'm sure his counsel is better equipped to address that. But I think it's fair given that this is something that should be addressed in the first instance in the district court. But as for the remaining appellees, especially, you know, the DOC appellees, since that claim does not pertain to them, we can still affirm it as to the claim. Okay, well, we'll let Dr. Cross's counsel, Mr. Lombard, speak to that one. Excellent, right back to you, your honor. It looks on my timer that I am out of time. If there's any further questions, I'm happy to address them. You guys have anything else for the person? All right, thank you. We'll move on to Mr. Lombard when he's ready. Hello, my name is Benjamin Lombard. May it please the court? I represent Dr. Cross in this matter. First, I'd like to thank the court for allowing us to appear remotely today. As I will address here, I respectfully request that the court affirm the district court's dismissal of Mr. DeFraya's claims against Dr. Cross. Turning to the Eighth Amendment claim, despite plaintiff's arguments made today, Dr. Cross exercised his medical judgment when discontinuing the medication. Therefore, it is our position that Mr. DeFraya has not stated an Eighth Amendment claim against him. This would be reliant on this court's decision in Brown v. Borough of Chambersburg, holding that the exercise by a doctor of his professional judgment is never deliberate indifference. And I think that is very important. Go ahead. A few questions. Did Mr. DeFraya seek out any medical care besides Suboxone once he started having withdrawal symptoms? Your Honor, based on the limited allegations of the complaint, I am not certain on that point. On the point that would be most telling about that is actually a grievance response that was attached by Mr. DeFraya to his response to Dr. Cross's motion to dismiss. The response was filed or appears in the record at JA-75, at least at the beginning. The grievance that was attached appears on the district court's docket at 25-1. It appears that Mr. DeFraya did ask for alternative medications and it appears that some were even offered to him. And I'm specifically citing what would be at 25-1, page one. It says that Dr. Cross saw Mr. DeFraya on February 22nd, 2023. And apparently Mr. DeFraya asked to be put back on Suboxone. And his request was denied. He also stated that he had an allergy to Vivitrol and that he did not meet the criteria for sublocate. I believe then- Those are brand names. You know what those generics are? Vivitrol and sublocate? Without doing some research on that, I unfortunately do not. We could look it up.  That's fine, go on. And I think that this is very telling that there was alternatives that were at least offered by Dr. Cross. And I think the court has already talked about the time that Mr. DeFraya was given in terms of weaning off of the medication. And that's a very telling point in this case is that Mr. DeFraya was not cut off cold turkey. I think that correctly rebuts any inference that Dr. Cross was deliberately indifferent to Mr. DeFraya's medical needs. And I have to also say that in terms of plaintiff or appellant's assertion that there was no medical basis for this continuance, this is simply not true considering that diversion has severe medical risk in the prison setting especially, particularly when those medications can be sold to other inmates or not prescribe the medication. It can also be hoarded for personal purposes in terms of abusing the medication further or for purposes of self-harm. You know, these are extreme medications that can be used for purposes of self-harm by inmates if they wish. And so for Dr. Cross to... Okay, but I think from the appellant's perspective, when they say there's no medical basis, they're not talking about potential harm to other people. They're saying that from DeFraya's perspective, there was no medical basis to take him off the Suboxone. That it was just done for, I guess, punitive reasons. And I mean, that is an allegation in the... That it would not have been done had it been a different kind of medication. I think, isn't that the allegation that you have to fight against? Well, I think that that certainly is Mr. DeFraya's perception of what happened and that is his allegation here. But I think that that ignores the other real likelihood that the Dr. Cross, when he's making his... But is this a fact question? Are you veering into fact questions? Remember, we're at the 12B6 stage. Sure, sure. And on that point, Ron, I would, again, point to the fact that Mr. DeFraya amended this grievance response to his response to Dr. Cross's motion to dismiss. I believe that what was in the grievance response, which discusses at page three, that this is a facility manager response, that the medication was not cut off for disciplinary sanction, as he alleges, that these documents, the grievance documents, were before the district judge when she was making her decision. So I think that at the 12B6 stage, they can still be considered. All right. What would the criteria be that the doctors would consider generally for deciding an inmate needs Suboxone or no longer needs it? I would say that that certainly is just within the realm of Dr. Cross's medical training and expertise. I think that because of the patients and their differences and how to be treated, the best position is that it's within the doctor's decision-making how to treat those patients. And so each case, each patient would have different medical needs and they would be treated as such. What was the basis of the doctor's conclusion that DeFraya no longer needed Suboxone? Was it just diversion or was there some other medical reason connected with it? Well, again, Your Honor, I point to the risk factors presented with diversion, which again could possibly be for personal abuse, meaning Mr. DeFraya could have been hoarding for purposes of abuse of the medication or purposes of self-harm. Those are known factors within the prison system that are present with instances of diversion that Dr. Cross would have had to weigh when he had to decide what to do in the best interest of Mr. DeFraya. I think the fact that those risks were present and the fact that Dr. Cross weaned Mr. DeFraya off of the medication over a tapered period at least show that Dr. Cross was exercising his medical decision-making and judgment, which would then defeat Mr. Cross's or Mr. DeFraya's Eighth Amendment claim based upon his court's prior circuit. What would you cite or suggest citing for this, what you just said about hoarding drugs can be connected to drug abuse or self-harm or something other than just, you know, the understandable policy concern about diversion. Is there something we should look at? In the record. In the record? In the record, Your Honor, I can't point to anything explaining those risks, except that, again, at the facility manager's response in the grievance that Mr. DeFraya appended to his response to Dr. Cross's motion to dismiss, again, that's 25-1 of the district court's docket that says, our records indicate that Dr. Cross's decision was based upon your possession of Suboxone that was not being utilized for purposes of Medicaid-assisted treatment. Our records further indicate that this has happened with you on multiple occasions. And it later says that despite your allegations, this was not done for disciplinary sanction. So it can only, therefore, be that Dr. Cross, it was a medical decision that Dr. Cross made leading to the discontinuance. It was not a disciplinary sanction. It was a considered medical response. All right. Thank you, Mr. Lombard. Mr. Longley, you reserved a few minutes for a bubble. Okay, thank you, Judge Bedes. So back to deliberate indifference under the Eighth Amendment, I think an additional indication of deliberate indifference here is the arbitrariness of the connection between the e-cigarette and diversion, which isn't explained at all in the complaint. And the fact that he possessed an e-cigarette in his jacket pocket, but wasn't using it for nefarious means, is simply not enough to underlie any sort of medical or security determination that he was diverting this medication or that this was not a deliberately indifferent choice that was not in regard to medical need. Additionally, the substantial risk of serious harm after the seven-day taper remained very high. And we cite in our opening brief that there's 120 times risk of overdose after somebody is cut off of the medication through opioid use disorder. And he experienced this harm. That's what I want to get to. Don't we have to look at what he actually alleged? And yes, and he did at JA-32 and JA-35. But not at the level of harm that you're referencing. Well, he does say that he experienced withdrawal symptoms, that he relapsed, which is a major risk of taking somebody off of MOUD, that he experienced severe anxiety and depression, these kinds of symptoms. So he experienced, he only has to show that there's a substantial risk of serious harm. He doesn't actually have to experience the harm, but he did, in fact, experience the harm as well. And the only, when I look at this complaint, the only allegation that I think gets to conduct allegedly because of his disability is the one that says, if the medication was different, the prison would not have removed me. I mean, is there something better than that or other than that? Well, I mean, I think that that is a specific allegation putting a bow on the conduct that he discusses. Okay, and that allegation actually doesn't say that if the medication was different, they wouldn't, it says, I believe if it was different. I don't know if that's legally relevant or legally sort of meaningful, but we could grant that he believes that, but that doesn't mean you have to accept that subjective belief. We could take it on. Let's say we take it on information and belief. We take some pleadings on that. What makes it plausible that that information and belief, in fact, reflects the deliberate indifference or reflects that it's because of the disability? You've said, well, the FDA wouldn't prescribe it because of this, but then we have to think about, all right, is it because of that? Like you've suggested, maybe it's because they don't, that is regarded as disabled, is regarded as addicted. But what about the hypo I gave to your friend on the other side about Xanax, right? Someone's not a Xanax addict, but he's accused of diverting, or maybe he's hoarding for later drug abuse, for self-harm, to attempt suicide, something like that, right? Is it plausible that they're gonna say like, oh no, we're not gonna worry about diverting because he's not addicted. What makes it plausible that this is connected to the disability of being an addict? Well, because just the simple tenuousness between the e-cigarette and the diversion allegations makes it, there's just too much gap-filling at this stage at 12B6, taking his allegations as true and leaving his pro se complaint liberally. Additionally- I'm sorry, I didn't see any connection between the e-cigarette allegations and then the diversion allegation being taken off the MOUD. I don't know if he intended to make a connection between the two, but as I read it, I thought he was saying, on this date, they said I had an e-cigarette, and on that date, I said I had an e-cigarette. And on this later date, they said I was diverting, so they took me off the medication. But I don't know that there was any connection between the allegations. I mean, the way that I read the complaint, and let me pull it up here, is- I'm saying I don't read it that way, so it would help me to show me the language that connects those allegations. Sure. I mean, these are the only, again, this is a very short complaint in part because he's writing it on a form that's provided to him. He's pro se. But the two allegations he makes is that he got a DC-141 misconduct through contraband Yeah. through having an e-cigarette. Yeah. And then he got the- got lit up again on January 22nd. Through a contraband. Through the e-cigarette. Right. And so the contraband being allegedly connected to diversion, it's- That's the connection that I don't find in the- I don't see it. It looks to me like there's two different kinds of allegations. There's the contraband allegations, and then following that, there's the diversion allegation and the MOUD. And so I sort of disregarded this stuff about contraband because it didn't seem like it was relevant. Yeah, well, I think it is- It seems like a non sequitur to me if he's not talking about the- That is the basis for why he was taken off of his medication and what the alleged- You don't have to be actually be caught diluting to be considered a diluter. It's on the basis of those two allegations. So it was- I don't understand what your theory is because that, I think, will be guided by that. But what I read from this is that the prison officials inferred that the cap on the e-cigarette could be used to divert the medication as a container. Apart from that, it's really, to me, Section 3A about what Dr. Cross was thinking. I mean, you've gotten a lot into sort of the evidentiary merits of whether he was a diverter or not. But if the doctor is under that impression and makes a medical treatment decision based on that impression, is it really our place to get into whether he reached the right conclusion on how to do it? Well, I think that it depends on what his- exactly what you said, his mindset is. And in Vermeer, this court has held that that very question of the mindset of the doctor is a fact question. And the defendants are pretty unremanned. And as Discovery goes forward to put forth evidence that he was not- that this was based on a medical decision. But what he says in the complaint is that he was removed from Suboxone for diversion. And not for a medical reason. That this was based on discipline. But I think that you've got to read these things liberally. But it's sort of- it's a unique situation where the plaintiff puts in into the pleading the things that I think are support inferences for the other side. And we have to draw inferences in his favor. Because this is what I allege the doctor was thinking. Diversion. There's a- it is plausible that the diversion creates a medical risk. This is- there's a- I'm not sure what's on the other side of the doctor gets this fact that there's diversion. He believes there's diversion. He does a taper. That's a medical decision. That this is not a complaint. That's asking us to revisit medical evidence. Well, because the diversion- the removal based on diversion may not be because of a medical judgment. It may be because he's trying to discipline him and enforce, you know, some sort of punishment. And that's why I focused on the taper early on. Because I think if your guy had left it, period, at, you know, he cut me off. It's a slightly different case. But the- you know, where the complaint contains the medical advice, the medical treatment. What pushes us here to the- to your inference? Where we have these facts that the doctor understood there- believed there was diversion and implemented the taper. Well, the fact that he suffered severe harm, including withdrawal symptoms, relapse. Isn't then, like, on these facts, isn't that just, like, you're looking at the outcome of the medical treatment and asking us to revisit sort of the doctor's medical judgment? Well, I mean, and in cases this- in Rouse, for example, they talk about a delay in medical care for non-medical reasons. In Montagne's, he- which just, you know, recently came down, it was about not being provided medical care for three days. So it doesn't have to be this total denial. But it does, you know, once those seven days were over, there's no doubt that he no longer received that medication and went through these symptoms and was at a highly increased- an increased risk of relapse, overdose, and death. Back to the way the complaint's drafted. Maybe- are you suggesting the best way to read it is they caught him with contra- is there any- is there any- is it contested that he actually had these e-cigarettes those first two times? No, the first time. It's- it is not contested that the first time he had it. Okay. He had it on his person, but he didn't have it in his possession in MATLINE. Okay. So both of them, it's- he does contest that he never had it in MATLINE. That's the allegation of the complaint. Is the best way to read the complaint that they said I had contraband twice and then, I don't know, 10 days later, the doctor- because of that, although I'm not a diverter, they falsely accused me of being a diverter in order to take my medication away and it was all going- it was all because of the contraband. Is that sort of how it links up? That's right. And it's not 10 days, it's three days. It was on the 22nd he got his- 10 days after the first one. 10 days after the first one, exactly. And so that was the- the disciplinary reason was the basis for him being removed from his MOUD and courts around the country have found that denial of MOUD specifically, including in this district in the Strickland case and some other cases, denial of MOUD specifically through non-medical reasons can amount to both deliberate indifference and a violation of the ADA. Anything else? No. All right. We thank both sides for their excellent briefing and argument. Mr. Longley, Mr. Feldman, were you appointed by this court for this case? We were not, no. Were you in the district court or no? Okay, but anyway. Yeah. Thank you for your service to the court. We'll take the matter under advisement and my apologies that we can't greet counsel for appellees, but we'd like just to go off the record and thank you both for your service. And please do let us know if there's any objection to posting the audio in this case. We should probably, let's get a transcript and ask appellees. It's going to be a little tricky with the quality of the audio, but please, if appellees can make arrangement to prepare a transcript, that would be helpful to the court.